UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TERRY LEE ASH,<br><br>                Petitioner,<br><br>    v.<br><br>RANDY E. BLADES,<br><br>                Respondent. | Case No. 1:17-cv-00308-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

      Petitioner Terry Lee Ash filed a Petition for Writ of Habeas Corpus challenging his state court conviction and sentences for driving under the influence and being a persistent violator of the law. (Dkt. 3.) Petitioner's first state court trial ended in mistrial, but he was convicted in a second trial. All named parties have consented to the jurisdiction of a United States Magistrate Judge to enter final orders in this case. (Dkt. 11.) *See* 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

      Earlier in this matter, the Court granted Respondent Randy Blades' Motion for Partial Summary Judgment and dismissed with prejudice Claims 2(b), 3(a), 3(b), and those portions of Claim 1 asserting violations of the Idaho Constitution. Respondent has filed an Answer and Brief in Support of Dismissal addressing the remaining claims (Dkt. 29), and Petitioner has elected not to file a reply.

**MEMORANDUM DECISION AND ORDER - 1**

Accordingly, Claims 1 and 2(a) are ripe for adjudication. The Court takes judicial notice of the records from Petitioner's state court proceedings, which have been lodged by the parties. *See* Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006). Having carefully reviewed the record, including the state court record, the Court finds that the parties have adequately presented the facts and legal arguments in the briefs and record and that oral argument is unnecessary. *See* D. Idaho L. Civ. R. 7.1(d). Therefore, the Court enters the following Order denying Petitioner's claims.

## BACKGROUND FACTS UNDERLYING CONVICTION
## (FROM SECOND TRIAL)

Two fishermen traveling to the Snake River on September 4, 2011, came upon Petitioner about 7:00 a.m. Petitioner's car had been wrecked into a ditch on the side of the road. They stopped to see if Petitioner needed help. Petitioner said he had driven the car into the ditch, expressed his gratitude for stopping to help, and asked the fisherman to pull his car out of the ditch. The fishermen declined, but told Petitioner they would call the sheriff's department to help him. Petitioner "emphatically" told them no, he did not want the sheriff's department to be called. The fishermen left and called the sheriff's office because they were suspicious of the circumstances. (State's Lodging A-5, pp. 70-82.)

Ada County Sheriff's Deputy Paul Lim arrived on the scene about 8:00 a.m. He saw Petitioner's car being towed by a tractor on the west shoulder of the road. Deputy Lim did not check the original crash site, but remained with Petitioner and his car. Deputy Lim asked Petitioner whether he had been drinking, and Petitioner replied that he

had not been drinking before the crash, but after the crash he had drunk one 16-ounce Ranier beer while he was sitting in the car for two hours waiting for help.

Deputy Lim testified at trial that Petitioner told him he crashed because his coffee was spilling, but Deputy Lim did not see any coffee stains or wet marks on Petitioner or in the car. (*Id.*, pp. 109-113.) Deputy Lim observed what he classified as thick speech or slurred speech from Petitioner, and administered field sobriety tests t Petitioner. (*Id.*, pp. 83-114.) Petitioner failed the tests. Petitioner was smoking while talking with Deputy Lim; when Petitioner finished his cigarette, he threw the butt on the ground. Deputy Lim told him to pick up the butt, or he would cite him for littering. (*Id.*)

Deputy Lim transported Petitioner to the Ada County Jail testing center. At 9:11 a.m., Petitioner's two Intoxilyzer 5000 EN tests registered blood alcohol content readings of .130 and .133—within the range to be charged with DUI.

State's expert Gary Dawson, who holds a Ph.D. degree in pharmacology, testified that, taking into consideration the time frames above, he believed Petitioner's high blood alcohol level could not have been caused by drinking just one 16-ounce beer between the time of the crash and the time the deputy arrived on the scene. Dr. Dawson estimated that it would have taken about six or seven 12-ounce beers for the blood alcohol content reading of 1.3, and that one 16-ounce beer would have yielded only a .02 to a .03 level. That is, if a male of average height and average weight drank one beer, it would be out of his system and virtually undetectable within one hour. (*Id.*, p. 127-146.)

**MEMORANDUM DECISION AND ORDER - 3**

Dr. Dawson testified that, given that the breath test was administered about two hours after Petitioner stated he drank the one can of beer that would have been metabolizing out of his system within an hour, at the time of the wreck Petitioner's "blood alcohol had to be much higher than would be attributable to just one 16-ounce can of beer in order to maintain that level that long." (*Id.*, p. 149.) In summary, Dr. Dawson agreed that it was scientifically impossible "for a person to have consumed one beer right before the police show up—in this case before—at 7:30, eight o'clock, to drink one 16-ounce beer to have blow a .13 an hour later." (*Id.*, p. 155.)

On cross-examination, Dr. Dawson agreed with defense counsel that, had Petitioner drunk four beers, not one, after the wreck, that would mean that his blood alcohol level at the time he wrecked the car would only have been approximately .05, not enough to meet the DUI statutory minimum of .08 for an adult over 21. (*Id.*, pp. 155-64.)

At trial Petitioner testified that he had actually drunk eight beers the day before the wreck, and four beers *after* he wrecked. He said that, after the wreck, he threw three beer cans out the window across the road and left only one in his car. He said he told the deputy he had drunk only one beer, because he did not want to get cited for littering, after the deputy threatened him about the tossed cigarette butt. Other trial evidence showed that, when Petitioner was in the jail, he told his sister that he drank only one beer. (*Id.*, pp. 184-202.)

Petitioner testified that he wrecked his car because one of his back tires went flat, making the car a "little bit squirrely," and, then another tire went flat. As he was trying to

juggle his cup of coffee and the car, he "did a 180" and "put the car in the ditch, where it got stuck." (*Id.*, p. 184-85.) Both of the flat tires, however, were on the passenger side of the car where Petitioner ran the car into the ditch—suggesting that the tire damage did not cause the wreck but occurred from contact with the ditch. (*Id.*, pp. 204-05.) Deputy Lim testified that Petitioner did not tell him that the tire had a part in causing the wreck; Petitioner told him only about the spilled coffee. (*Id.*, p. 112.) Petitioner also testified that he had a brain injury as a result of a fire he was in, and that is why his speech is impaired. (*Id.*, p. 188.)

After the second trial, Petitioner was found guilty of felony DUI. (State's Lodgings A-1, p. 135; A-5, pp. 1, 247.) He underwent a psychological evaluation before sentencing. On October 17, 2012, a judgment of conviction was entered on the crime of felony driving under the influence with a persistent violator enhancement. Petitioner received a unified sentence of life imprisonment with fifteen years fixed. The sentencing judge noted that Petitioner had been convicted of eleven prior misdemeanor DUIs and five prior felony DUIs. (State's Lodging A-5, p. 289-90.)

Petitioner pursued a direct appeal as well as state post-conviction remedies. (Dkt. 3 at 1-2.) He received no relief in state court.

## DISCUSSION

Two claims remain to be adjudicated:

> Claim 1   Petitioner's trial counsel rendered ineffective assistance by "failing to move to dismiss the second prosecution as a violation of [Petitioner's] state and

**MEMORANDUM DECISION AND ORDER - 5**

>
>
> federal constitutional protections against double jeopardy" (*Id*. at 6), and

        Claim 2(a)        Petitioner was denied his right to be free from double jeopardy. (*Id*. at 7.)

**1.    Claim 1: Ineffective Assistance of Counsel**

*A.    Standard of Law*

Title 28 U.S.C.§ 2254(d), as amended by the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), applies when a petitioner files a federal habeas corpus action to challenge a state court judgment. That section limits relief to instances where the state court's adjudication of the petitioner's claim:

    1.    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    2.    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

The source of clearly established federal law must come only from the holdings of the United States Supreme Court, but circuit precedent may be persuasive authority for determining whether a state court decision is an unreasonable application of Supreme Court precedent. *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999). However, a habeas court is not permitted to use circuit law "to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013).

To assess whether habeas corpus relief is warranted, the federal district court reviews "the last state-court adjudication on the merits." *Greene v. Fisher*, 565 U.S. 34, 41 (2011). The deferential standard of section 2254(d) applies regardless of whether the state court decision "is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id*. at 99. When the last adjudication on the merits provides a reasoned opinion, federal courts evaluate the opinion as the grounds for denial. 28 U.S.C. 2254(d).

However, where the state's highest court did not issue a reasoned decision, courts within the Ninth Circuit review the decision of the Idaho Court of Appeals, using the "look through" principle of *Ylst v. Nunnemaker*, 501 U.S. 797 (1991), and "presume the higher court agreed with and adopted the reasons given by the lower court." *Curiel v. Miller*, 830 F.3d 864 (9th Cir. 2016).[1]

The clearly-established law governing a Sixth Amendment claim of ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* dictates that, to succeed on an ineffective assistance claim, a petitioner must

---

[1] The United States Supreme Court has since clarified: "In *Ylst*, we said that where "the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits. 501 U.S., at 803, 111 S.Ct. 2590," but that the presumption can be refuted by "strong evidence." *Kernan v. Hinojosa*, 136 S. Ct. 1603, 1605–06 (2016).

**MEMORANDUM DECISION AND ORDER - 7**

show that (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness, and that (2) the petitioner was prejudiced by the deficient performance. *Id*. at 684.

In assessing trial counsel's performance under *Strickland*'s first prong, a reviewing court must view counsel's conduct at the time that the challenged act or omission occurred, making an effort to eliminate the distorting lens of hindsight. *Id*. at 689. The court must indulge in the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id*.

In assessing prejudice under *Strickland*'s second prong, a court must conclude that, under the particular circumstances of the case, there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id*. at 684, 694. A reasonable probability is one sufficient to undermine confidence in the outcome. *Id*. at 694.

A petitioner must establish both deficient performance and prejudice to prove an ineffective assistance of counsel claim. 466 U.S. at 697. On habeas review, the court may consider either prong of the *Strickland* test first, or it may address both prongs, even if one is deficient and will compel denial. *Id.*

The foregoing standard, giving deference to counsel's decisionmaking, is the de novo standard of review. Another layer of deference—to the state court decision—is afforded under AEDPA. In giving guidance to district courts reviewing *Strickland* claims on habeas corpus review, the United States Supreme Court explained:

The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." *Williams*, *supra*, at 410, 120 S.Ct. 1495. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Harrington v. Richter*, 562 U.S. 86, 112 (2011).

Within an ineffective assistance of counsel claim, the Court also reviews the law governing the subject of the alleged deficient performance—here, double jeopardy. Generally, a defendant's motion for mistrial removes any double jeopardy bar to retrial. *Oregon v. Kennedy*, 456 U.S. 667, 673 (1982). A narrow exception to this general rule arises when the prosecutor intended to provoke the defendant into moving for a mistrial. *Id.*, p. 679. In that instance, double jeopardy attaches, because a defendant has "an interest[] in having his case decided by the jury first selected." *Id.*, p. 672.

### B. Facts from First Trial Underlying Double Jeopardy Claim

Petitioner's double jeopardy claim is based upon the following question and answer at his first trial:

> Prosecutor: Now, after he performed those FSTs [field sobriety tests] and you arrested him, did he say anything about drinking any more alcohol besides the one beer?
>
> Deputy: *He decided not to say anything more after that.*

**MEMORANDUM DECISION AND ORDER - 9**

>   Prosecutor: Once you transported him, where did you take him?
>
>   Deputy: To the Ada County Jail intoxilyzer room.
>
>   Prosecutor: And when you got there, what did you do?

(State's Lodging C-1, p. 94 (emphasis added).)

At that point, defense counsel moved for a mistrial, arguing that "it's reasonable to assume that some of the jurors, especially after voir dire, that his failure to be completely open with the police might work against him in this matter." (*Id.*, p. 96.) Petitioner's counsel reasoned that, simply because the answer "could be understood by the jury that he did not decide to talk any further and could be held against him in the deliberations," declaring a mistrial was required. (*Id.*, pp. 97-98.)

The trial court observed:

> Certainly it is settled that it is erroneous for a prosecutor to introduce the fact of post-arrest silence for the purpose of raising an inference of guilt. Even in the form police testimony regarding post arrest silence, it is improper for the State to elicit police testimony of post-arrest silence as a violation as certainly implication of defendant's Fifth Amendment rights. Certainly the defendant's right to remain silent attaches upon custody. And a prosecutor cannot use post-custody silence to infer guilty in its case in chief.

(*Id.*, pp. 99-100.)

The trial court asked the prosecutor to submit an affidavit explaining the reasoning for her question and asked both sides to brief the issue. *Id.*, pp. 101-02.

In her Affidavit, the prosecutor stated that she had reviewed several times a video of Deputy Lim interacting with Petitioner. At no time in her reviews did she recognize

**MEMORANDUM DECISION AND ORDER - 10**

that Petitioner actually stated he would be "standing on the Fifth"; she reasoned that she did not hear that statement because Petitioner said it in a low tone during his pat down, and she had no reason to believe that Petitioner had asserted his right to remain silent because he continued to talk to the deputy throughout the video. To prepare for trial, the prosecutor met with the deputy, but was unaware of Petitioner's statement and thus did not discuss it with the deputy. (State's Lodging A-1, pp. 63-64.)

The prosecutor explained the objective of her question as follows:

> In preparation for trial, your affiant learned from the Defendant's attorney through multiple discussions, that the Defendant planned to testify that he consumed more alcohol than he originally told the deputy and during voir dire at trial, the Defendant's attorney asked questions tending to suggest that defense. Based on these factors, your affiant asked the deputy if the Defendant ever said he had more than one beer to preempt [that] defense.

(State's Lodging C-1, p. 121.)

The prosecutor also averred that she understood how the Fifth Amendment applies, that she would not intentionally violate that right, and that she did not intentionally attempt to elicit testimony that would violate Petitioner's right to silence. (State's Lodging A-1, p. 64.) In support of the State's position, another prosecutor argued: "There were statements the defendant made spontaneously while being transported that she thought were relevant, and she was going toward that direction with this line of questioning and didn't understand or didn't know this was going to occur until the officer made the statement and pointed out to her where it was made—it's not in the police reports [or] in other matters." (C-1, pp. 106-07.)

**MEMORANDUM DECISION AND ORDER - 11**

The trial court pointed out that, for the prosecutor to have properly discussed post-arrest statements with the jury present, she first should have laid a foundation to show that a *Miranda* warning was given and waived. She did not provide any relevant foundation to permit her to enter into the forbidden area of post-arrest statements. Further, it was improper for a prosecutor to try to anticipate a defendant's testimony and prevent "rebuttal" evidence *before* a defendant testifies. "So," the court reasoned, "the bare question here simply asks the officer to testify about post-arrest statements," even though it is fundamental error for an officer to testify about post-arrest silence. (*Id.*, p. 108.)

The trial court found that

> the State's inquiry about post-arrest silence was to influence [Ash's] decision about testifying to different facts than stated by the officer. In this sense, [the prosecutor] certainly acted intentionally. However, there is nothing in the record that the State intended thereby to "provoke the defendant into calling for a mistrial..." Rather it appears the deputy prosecutor acted upon an inadequate understanding of the law. Therefore, double jeopardy did not attach to [Ash's] case and was not a bar to subsequent prosecution....
>
> Even if Ash's trial counsel had objected or moved to dismiss the second trial, the end result would have been the same.

(State's Lodging D-4, pp. 5-6.)

Based on the submissions of counsel, the trial court "concluded that there was no genuine issue of material fact about whether the prosecutor intended to provoke Ash into moving for a mistrial, and concluded, in fact, that the prosecutor did not intend to provoke him into moving for a mistrial." (State's Lodging D-4, p. 5.)

**MEMORANDUM DECISION AND ORDER - 12**

C.  *State Appellate Court Decision*

On appeal, Petitioner re-asserted his claim that the prosecutor intended to provoke him into moving for a mistrial by inquiring about post-arrest silence, and that his trial counsel should have objected to the second trial as a violation of the Fifth Amendment's Double Jeopardy Clause. (State's Lodging D-1.) The Idaho Court of Appeals affirmed dismissal of Claim 1, concluding that an objection to the second trial on double jeopardy grounds would not have been successful; thus, the claim failed under both prongs of *Strickland*: counsel did not perform deficiently and prejudice did not result. (State's Lodging D-4, pp. 4-6.)

D.  *Analysis*

First, there is no unreasonable determination of the facts apparent from the record because Petitioner has pointed to no set of facts supporting intentional "goading." He argues only that the Affidavit is inconsistent in that the prosecutor's "averment that she understands the Fifth Amendment and that she did not intend to violate it cannot be true—because she either did not understand the Amendment or she did intend to violate it, because she did violate it." (State's Lodging D-4, p. 5.) Another option Petitioner ignores—made clear by the trial court's explanation of the right way to try to present such evidence—is that the prosecutor understood the Fifth Amendment only in a cursory manner and violated it not because she intended to, but because she was suffering from the classic myopia symptom of "not knowing what she did not know." Regardless, the true issue is whether there is evidence in the record that the prosecutor intended to cause

Petitioner to *invoke his right to a mistrial*, not whether the prosecutor understood or intended to violate the Fifth Amendment. Petitioner points to no such evidence.

This Court gives deference to the factual findings of the state trial and appellate courts and to the legal conclusion of the appellate court. However, even without the added layer of AEDPA deference, the claim still fails on de novo review. Application of double jeopardy in the context of mistrial is very narrow. Double jeopardy does not attach for *any* intentional act of the prosecutor, but only to "governmental conduct ... intended to 'goad' the defendant into moving for a mistrial." *See Kennedy*, 456 U.S. at 676. It is very clear from the entire record that the prosecutor's intention was to try to preclude Petitioner from testifying that he had drunk four beers after the wreck, instead of sticking with what he told Deputy Lim and his sister—that he had drunk only one. Whether out of negligence or ineptitude, the prosecutor thought she could pursue a line of improper questioning with the object of cutting off what she perceived to be perjury before it happened.

This Court concludes that Petitioner's constitutional rights were protected by the declaration of the mistrial. Because the problematic question was *not* for the purpose of forcing Petitioner to request a mistrial, Petitioner had no constitutional right to be free from being re-tried on the same charges. There is no double jeopardy violation apparent from the record. Hence, the Idaho Court of Appeals' decision is not an unreasonable application of *Strickland*. Accordingly, relief under Section 2254(d) is not warranted.

2. **Claim 2: Double Jeopardy Claim**

Petitioner also brings a stand-alone Double Jeopardy claim that is not enveloped in an ineffective assistance of counsel claim. There was some question on appeal whether Petitioner should have brought his stand-alone claim on direct appeal, rather than on post-conviction review. Regardless, the Idaho Court of Appeals rejected Claim 2 on the merits, because it upheld the state post-conviction court's "conclusion that the prosecutor did not intend to provoke Ash into moving for a mistrial." (State's Lodgings D-4, p. 7.) For the reasons set forth directly above, this claim is also subject to denial.

## ORDER

**IT IS ORDERED:**

1. The Petition for Writ of Habeas Corpus (Dkt. 3 ) is DENIED and DISMISSED with prejudice.

2. The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If Petitioner files a timely notice of appeal, the Clerk of Court shall forward a copy of the notice of appeal, together with this Order, to the United States Court of Appeals for the Ninth Circuit. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED: December 23, 2019



_____
Honorable Ronald E. Bush
Chief U. S. Magistrate Judge